IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


KATHRYN COWAN,                    )
                                 )
                Plaintiff,       )
                                 )
vs.                              )        Case No. 09-1154-WEB
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                Defendant.       )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the

conclusion.  The determination of whether substantial evidence

supports the Commissioner's decision is not simply a quantitative

exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it really constitutes mere conclusion.  Ray

v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court

is not to reweigh the evidence, the findings of the Commissioner

will not be mechanically accepted.  Nor will the findings be

affirmed by isolating facts and labeling them substantial

evidence, as the court must scrutinize the entire record in

determining whether the Commissioner's conclusions are rational.

Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The

court should examine the record as a whole, including whatever in

the record fairly detracts from the weight of the Commissioner's

decision and, on that basis, determine if the substantiality of

the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

determined to be under a disability only if the claimant can

establish that they have a physical or mental impairment expected

to result in death or last for a continuous period of twelve

months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On March 3, 2009, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 10-18).  Plaintiff alleges that she has been disabled since February 14, 2007 (R. at 10). Plaintiff is insured for disability insurance benefits through

December 31, 2011 (R. at 12). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since February 14, 2007, the alleged onset date of disability (R. at 12). At step two, the ALJ found that plaintiff has the following severe impairments: obesity; insulin dependent diabetes; degenerative disk disease, lumbar spine; bronchiectasis with chronic bronchitis; depressive disorder; and generalized anxiety disorder (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining plaintiff's RFC (R. at 14), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 16). At step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy (R. at 17). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 17).

## III. Are the ALJ's RFC findings supported by substantial evidence?

The ALJ made the following RFC findings for the plaintiff:

> ...claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can have no concentrated exposure to pulmonary irritants. She can have no more than occasional contact with the general public, and no more than frequent contact with co-workers.

(R. at 14). The ALJ indicated that his RFC findings are:

> ...consistent with the opinions of the
> Disability Determination Services (DDS)
> physicians as documented in Exhibits 10F and
> 9F. Their opinions are consistent with the
> evidence in its entirety. Therefore, the
> undersigned gives substantial weight to their
> opinions.

(R. at 16). Plaintiff argues that although the ALJ gave substantial weight to state agency assessments, the ALJ failed to cite specific medical evidence or medical opinions that support his RFC findings (Doc. 12 at 10).

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the

court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ states that he made RFC findings "consistent" with the opinions of the state agency physicians in Exhibits 10F and 9F (R. at 16).  However, the physical RFC assessment (Exhibit 10F) limited plaintiff to occasional climbing (ramps, stairs, ladders, ropes, scaffolds), crouching and crawling, and frequent balancing, stooping, and kneeling due to back pain and obesity

(R. at 337).[1]  However, without explanation, the ALJ did not include these limitations in his RFC findings.

Furthermore, the mental RFC assessment (Exhibit 8F)[2] found that plaintiff is moderately limited in the ability to interact with the general public, and is also moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes (R. at 318).  In that assessment, Dr. Adams also stated that plaintiff "should avoid extensive contact with the public and with coworkers" (R. at 319).  However, without explanation, the ALJ's RFC findings limited plaintiff to "occasional" contact with the general public, but "frequent" contact with co-workers.  Given the fact that the assessment indicated moderate limitations in both

_____

[1]According to the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (U.S. Dept. of Labor, 1993 at C-3), "occasionally" involves an activity existing up to 1/3 of the time, "frequently" involves an activity existing from 1/3 to 2/3 of the time, and "constantly" involves an activity or condition that exists 2/3 or more of the time.

[2]The record contains both Exhibit 9F (a Psychiatric Review Technique form) and Exhibit 8F (a mental RFC assessment).  Both were filled out on the same date by Dr. Adams (R. at 317-333). Exhibit 8F provides opinions regarding plaintiff's mental limitations in 20 categories in order to determine plaintiff's mental RFC at steps four and five of the sequential evaluation process, while Exhibit 9F provides opinions in 4 broad categories in order to determine the severity of a mental impairment at steps two and three.  See SSR 96-8p, 1996 WL 374184 at *4. Although the ALJ only references Exhibit 9F to support his mental RFC findings, it is reasonable to assume that he meant to refer to Exhibit 8F, since only those findings by the same professional on the same date are applicable to a claimant's mental RFC findings.

categories, the ALJ offered no explanation for making RFC findings limiting plaintiff to occasional contact with the general public, but frequent contact with co-workers.

In the case of Brown v. Commissioner of Social Security Administration, 245 F. Supp.2d 1175, 1186-1187 (D. Kan. 2003), the ALJ purported to base his RFC findings on a state agency medical assessment. However, the ALJ's findings were not consistent with many items reflected in the assessment. The court noted that the ALJ never explained why he made findings inconsistent with the assessment, nor did he even acknowledge that he was rejecting portions of the assessment. The ALJ failed to cite to any medical records in support of his RFC findings other than the medical assessment. Because the ALJ failed to link his RFC determination with specific evidence in the record, the court held that he failed to comply with SSR 96-8p. In the case of Balderes v. Astrue, Case No. 08-1378-WEB (D. Kan. Nov. 10, 2009, Doc. 24 at 7-11), the court reversed the decision of the Commissioner because the ALJ, despite "adopting" the opinions of Dr. Adams, failed to provide any explanation for not including in his RFC findings some of the limitations in the report of Dr. Adams). In Baker v. Astrue, Case No. 08-1382-MLB (D. Kan. Oct. 9, 2009, Doc. 17 at 7-12), the court reversed the decision of the Commissioner because the ALJ, despite giving great or substantial weight to the opinions of Dr. Whitten and Dr. Mintz, failed to

provide any explanation for not including in his RFC findings some of the limitations in their reports. In <u>Valdez v. Astrue</u>, Case No. 08-1260-MLB (D. Kan. Aug. 19, 2009, Doc. 12 at 13-17), the court reversed the decision of the Commissioner because the ALJ, despite giving substantial weight to the opinions of Dr. Stern, failed to provide any explanation for not including some of Dr. Stern's limitations in his RFC findings, in violation of SSR 96-8p. Likewise, in <u>Smith v. Astrue</u>, Case No. 08-1052-MLB (D. Kan. June 4, 2009, Doc. 20 at 7-13), the court reversed the decision of the Commissioner because the ALJ, despite "adopting" two medical assessment opinions, made RFC findings which did not match either assessment. The court held that the ALJ violated SSR 96-8p because the ALJ's RFC assessment conflicted with medical source opinions that he had purportedly adopted, and the ALJ failed to explain why he did not include in his RFC findings all of the restrictions contained in those medical assessments.

In the case before the court (Cowan), as in the cases cited above, the ALJ asserts that he made RFC findings "consistent" with the opinions of the state agency physicians (Exhibits 10F and 8F). However, without explanation, the ALJ made RFC findings that are not consistent with some of the opinions in the assessments. The ALJ does not cite to any other medical records, medical opinion evidence, or other evidence to support his RFC findings which vary from the state agency assessments. Thus, the

10

ALJ has failed to link his RFC determination with specific evidence in the record. Although SSR 96-8p requires the ALJ to explain why his RFC findings vary from the assessment indicating that plaintiff is limited to occasional climbing, crouching and crawling, the ALJ failed to do so. The ALJ also failed to provide a narrative explanation for finding that plaintiff can have occasional contact with the general public, but frequent contact with co-workers in light of the assessment finding moderate limitations in both categories. The court agrees with the plaintiff that the ALJ failed to cite to specific medical evidence, medical opinions or other evidence that support his RFC findings. Due to the ALJ's failure to comply with SSR 96-8p, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.

There are other problems with the ALJ's RFC findings. The ALJ stated that plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, SSR 96-8p states that the RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a "function-by-function" basis. Only after that may RFC be expressed in terms of the exertional levels of work (sedentary, light, etc.). 1996 WL 374184 at *1. At both step four and step five of the sequential evaluation process, the RFC must not be expressed solely in terms

of the exertional categories.  1996 WL 374184 at *3-4.  At step

five, the RFC must be expressed in terms of the exertional

category.  However, in order for an individual to do a full range

of work at a given exertional level, the individual must be able

to perform substantially all of the exertional and nonexertional[3]

functions required in work at that level.  Therefore, it is still

"necessary" to assess the individual's capacity to perform each

of the exertional and nonexertional functions in order to decide

which exertional level is appropriate and whether the individual

is capable of doing the full range of work contemplated by the

exertional level.  1996 WL 374184 at *3.  A proper RFC assessment

must address both the remaining exertional and nonexertional

capabilities of the claimant.  Each exertional function must be

considered separately.  Although the regulations describing the

exertional levels of work and the Dictionary of Occupational

Titles (DOT) and its related volumes pair some functions, it is

not invariably the case that treating the activities together

will result in the same decisional outcome as treating them

---

[3]Exertional capacity addresses an individual's limitations
and restrictions of physical strength and defines the
individual's remaining ability to perform each of seven strength
demands: sitting, standing, walking, lifting, carrying, pushing
and pulling.  Nonexertional capacity considers any work-related
limitations and restrictions that are not exertional.
Nonexertional limitations include limitations in mental
abilities, vision, hearing, speech, climbing, balancing,
stooping, kneeling, crouching, crawling, reaching, handling,
fingering, feeling and environmental limitations.  SSR 96-9p,
1996 WL 374185 at *5.

separately.  Separate consideration of each function may also influence decisionmaking at step five of the sequential evaluation process.  1996 WL 374184 at *5.  Therefore, the ALJ erred by failing to perform the function-by-function analysis required by SSR 96-8p.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784 (10th Cir. July 28, 2003).

The ALJ did cite to light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[4]  Those regulations define light work as follows:

> *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b), § 416.967(b) (2009 at 393, 983).

This definition does mention specific requirements regarding the ability to lift/carry, but does not establish specific

---

[4]The government brief also cites to SSR 83-10 as defining light work (Doc. 17 at 5).  However, the ALJ did not cite to SSR 83-10 to define light work, and it will not be considered by the court.

requirements regarding a person's ability to sit, stand, walk, push and pull. A general reference to this regulation does not satisfy the requirements of SSR 96-8p, which makes clear that each exertional and nonexertional function must be considered separately because it may influence decisionmaking at step five. Therefore, the court finds that the ALJ erred by failing to make function-by-function findings regarding plaintiff's limitations or restrictions as required by SSR 96-8p.

Another problem with the ALJ's RFC findings is that the ALJ referred to Exhibits 9F and 10F and the opinions by "physicians" contained in those exhibits. Exhibit 10F was signed by Matthew W. Barnes (R. at 342). As plaintiff asserts, Mr. Barnes is a DDS examiner (R. at 50, 51), and there is no evidence that he is an acceptable medical source. Thus, this situation is similar to the agency's use of SDMs. An SDM stands for a "Single Decision Maker." An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources. Pickett v. Astrue, Case No. 09-1020-JTM (D. Kan. Nov. 25, 2009; Doc. 24 at 17-18); McGlothlin v. Astrue, Case No. 08-1117-WEB (D. Kan. Aug. 4, 2009; Doc. 17 at 7); Toon v. Astrue, Case No. 07-1369-MLB (D. Kan. March 17, 2009; Doc. 18 at 14-15); Ky v. Astrue, 2009 WL 68760 at *3 (D. Colo. Jan. 8, 2009); Bolton v. Astrue, 2008 WL 2038513 at *4 (M.D. Fla. May 12, 2008);

<u>Velasquez v. Astrue</u>, 2008 WL 791950 at *3 (D. Colo. March 20, 2008).

Defendant does not contend that Mr. Barnes is an acceptable medical source, but points out that the assessment in Exhibit 10F was reviewed and approved by a physician, Dr. Siemsen (R. at 361, Exhibit 14F).  However, the ALJ never referenced Exhibit 14F, so it is not entirely clear if the ALJ was relying on the opinions of Mr. Barnes, Dr. Siemsen, or both.  Therefore, on remand, the ALJ would be well advised to reference Exhibit 14F, and acknowledge that the initial physical RFC assessment was not prepared by a physician.

Plaintiff also asserts that the ALJ failed to evaluate plaintiff's obesity as required by SSR 02-01p when formulating plaintiff's RFC.  However, in explaining his RFC findings, the ALJ noted the diagnosis of morbid obesity, but found that the medical evidence did not support disabling symptoms due to obesity (R. at 15).  On the other hand, the ALJ offered no explanation for not including postural limitations resulting from back pain and obesity, as set forth in Exhibit 10F.  When this case is remanded, the ALJ should address whether these limitations should be included in plaintiff's RFC.

**IV.  Did the ALJ err in his credibility analysis?**

Plaintiff argues that the ALJ erred in his credibility analysis.  The court will not reweigh the evidence or substitute

its judgment for that of the Commissioner.  <u>Hackett v. Barnhart</u>,

395 F.3d 1168, 1173 (10th Cir. 2005).  Credibility

determinations are peculiarly the province of the finder of fact,

and a court will not upset such determinations when supported by

substantial evidence.  However, findings as to credibility should

be closely and affirmatively linked to substantial evidence and

not just a conclusion in the guise of findings.  <u>Kepler v.</u>

<u>Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ

cannot ignore evidence favorable to the plaintiff.  <u>Owen v.</u>

<u>Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require

a formalistic factor-by-factor recitation of the evidence.  So

long as the ALJ sets forth the specific evidence he relies on in

evaluating the claimant's credibility, the ALJ will be deemed to

have satisfied the requirements set forth in <u>Kepler</u>.  <u>White v.</u>

<u>Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2002); <u>Qualls v. Apfel</u>,

206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore

explain and support with substantial evidence which part(s) of

claimant's testimony he did not believe and why.  <u>McGoffin v.</u>

<u>Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for

the ALJ to use standard boilerplate language which fails to set

forth the specific evidence the ALJ considered in determining

that a claimant's complaints were not credible.  <u>Hardman v.</u>

<u>Barnhart</u>, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand,

an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

As noted above, the court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  However, on remand, the ALJ will need to make new credibility findings after considering all the medical opinions and medical evidence.

The court will discuss one issue regarding credibility that should be specifically addressed by the ALJ when this case is remanded.  The ALJ stated that plaintiff's daily activities, including time spent outside of her home taking care of personal business, driving, performing household chores, using a computer and watching television are activities "inconsistent with her alleged disabling symptoms" (R. at 16).  Although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Thompson, 987 F.2d at 1490; see Broadbent v. Harris, 698 F.2d

17

407, 413 (10th Cir. 1983)(the fact that claimant admitted to working in his yard, performed a few household tasks, worked on cars, and took occasional trips was found by the court to be activities not conducted on a regular basis and did not involve prolonged physical activity; while this evidence may be considered along with medical testimony in the determination of whether a party is entitled to disability benefits, such diversions do not establish, without more evidence, that a person is able to engage in substantial gainful activity). One does not need to be utterly or totally incapacitated in order to be disabled. <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001); <u>Jones v. Sullivan</u>, 804 F. Supp. 1398, 1405 (D. Kan. 1992).

In the case of <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.** As we said in <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the

18

test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.' " Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.

Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).

In light of the case law set forth above, the court has serious concerns with the ALJ's conclusion that plaintiff's daily activities are inconsistent with her allegations of disabling symptoms. The daily activities of plaintiff in this case are similar to the daily activities of the claimants in <u>Draper</u> and the other cases set forth above. The fact that plaintiff tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of disabling symptoms. Therefore, when this case is remanded, the ALJ's consideration of plaintiff's daily activities and her credibility must be in accordance with the case law set forth above.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 14 days after being served with a copy.

Dated at Wichita, Kansas, on April 9, 2010.

s/Gerald B. Cohn
GERALD B. COHN
United States Magistrate Judge